## NATIONAL LABOR RELATIONS BOARD v. PIEDMONT COTTON MILLS.

### No. 12864.

United States Court of Appeals
Fifth Circuit.

Jan. 30, 1950.

Charles A. Kyle, Atty., Nat. Labor Relations Bd., New Orleans, La., A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Assoc. Gen. Counsel, Washington, D. C., for petitioner.

John Wesley Weekes, Decatur, Ga., Murphey Candler, Jr., Decatur, Ga., for respondent.

Before HUTCHESON, Chief Judge, and HOLMES and McCORD, Circuit Judges.

HUTCHESON, Chief Judge.

Petitioning for enforcement of its order,[1] the board is here, by brief, appendix, and oral argument, insisting that the order is supported by its findings, of unfair labor practices, its findings, by facts of record, and that the order should be enforced as written.

Respondent, vigorously resisting the petition, urges upon us that the findings are without adequate support in the record and that the enforcement of the order should be denied. In doing this, it argues the issues presented to us at length as though we were trying them *de novo* wtih authority to find the facts as we think they ought to be found, and the law as it ought to be written.

■ We have no such function. We must take the law as it is written and laid down and, if the evidence, taken as a whole, supports the findings, the facts as they have been found by the board.

The actions complained of all occurred before the passage in 1947 of the Taft Hartley Act, the National Labor Relations Act, as amended. 29 U.S.C.A. § 141 et seq. The controlling law, therefore, as to whether violations have occurred, is to be found in the Wagner Act, the National Labor Relations Act, as originally enacted. 29 U.S.C.A. § 151 et seq.

■ The law prescribed in that act, for ordinary cases such as this one, as it has been interpreted in, and by, the courts, is simple and plain, and no discussion of it, or citation by us of authorities construing it, is called for here. The board's order is supported by its findings, and if these findings in turn, as to all or any part of the order, are supported by the record, the order, to the extent that it is so supported, must be enforced.

■ Nothing will be gained by undertaking to set out in detail here the course of dealings between, or the things done and said by, respondent and the union, as representative, from the time the contract was entered into, June 6, 1945, pursuant to certification of representatives, February 23, 1945, to the filing, on May 27, 1946, of the original, and, on May 8, 1947, of the amended, charge. It is sufficient to say that the findings of the board dealing with the refusal to bargain with the union and with the closing of the plant in May, are fully supported by the evidence, and that the orders based on these findings should, and will, therefore, be enforced.

■ As to the finding, however, that Norred was discriminatorily discharged and refused reemployment, we think it clear that this finding is not based upon any fact supporting, or tending to support it. The evidence shows, and it is found, that Norred was employed on March 11, 1946, and that four or five weeks after his employment, and long before he had become president of the union, Norred went on the night, or third shift. It shows, too, that on June 15, Norred replaced Sanders as president of the Local, and participated in the meeting on June 21st, with respondent's representative to discuss the union's wage demands, and that it was not until five months afterwards that Norred was laid off for the reason that the third, or night, shift was closed down.

Nobody testified that Norred was discharged for union activities. The reason given by the employer that there was no seniority in the plant, that men were put to, and kept at, work on the basis of their qualifications and that the men given work were better qualified than Norred, must, in the absence of evidence or reason to the contrary, of which there is none, be accepted.

The examiner and the board, stating that Swords told Norred that if the night shift was discontinued, he would take care of Norred on the first or second shift, and that he ought, therefore, to have been given work, seems to confuse the issue here.

I. (1) Cease and desist from refusing to bargain collectively with, or discharging members in, Textile Workers Union; or in any manner interfering with, restraining, or coercing its members in excess of the right of self-organization, etc.

(2) (a) Upon request, bargain collectively with Textile Workers Union; (b) reinstate D. J. Norred; (c) make him whole for loss of pay; (d) make all its employees whole for loss of pay from the May 30th shut down of the plant.

This is not whether the statement made by Swords ought or ought not to have been made good with Norred. It is whether Norred's discharge was a discriminatory one under the act.

In addition to the complete lack of evidence to support the board's finding that Norred was discriminatorily laid off, there is Norred's sworn statement in his application for state workmen's compensation that he was "laid off from the Piedmont Cotton Mills for lack of work only". It was long ago settled under the Wagner Act that an employer's right to discharge, except for prohibited reasons, has not been affected by the act, and that an employer may, therefore, discharge, or refuse to employ anyone for any reason except for those prohibited by the statute.

The petition of the board for enforcement of the order will be granted except as to that part of paragraph 2, subdivision (b) requiring respondent to reinstate Norred, and (c) requiring him to be made whole. As to that part, it will be denied.